UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANGELINA FLORES TORRES,<br><br>Petitioner,<br><br>v.<br><br>LAURA HERMOSILLO et al.,<br><br>Respondents. | CASE NO. 2:25-cv-02687-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

This matter comes before the Court on Petitioner Angelina Flores Torres's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons stated below, the Court grants the petition in part and denies it in part.

I.  BACKGROUND

Flores Torres avers that she is a "a 52-year-old native of Mexico who came to the United States to seek asylum in 2019." Dkt. No. 1 at 2. On or about October 23, 2019, Flores Torres entered the United States, was detained briefly at the border, and was issued a Notice to Appear ("NTA") "charging her as inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA)[.]" Dkt. No. 6 at 3. She was granted parole in the United States under 8 U.S.C. § 1182(d)(5)(A) "because she was the primary care provider of her Mexican National mother who was also issued a NTA and paroled into the United States due to being ill and bound

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

to a wheelchair." *Id.* at 3. On September 24, 2021, Flores Torres filed an application for asylum. *Id.* Her initial hearing was not scheduled until June 2025, but the master calendar hearing was vacated, and the case was then set for a final merits hearing on June 18, 2029. Dkt. No. 1 at 2.

In June 2025, Flores Torres "erroneously believed that she did not have to attend" a U.S. Immigration and Customs Enforcement ("ICE") check-in appointment. *Id.* "Despite failing to attend this in-person appointment Ms. Flores continued to check[ ]in using the ICE application, and even went to the local office in person on several occasions when there were issues with the app." *Id.* "She was not told about the missed appointment or reprimanded in any way until December when she received a call asking her to check-in to the local ICE office." *Id.* When she did, she was "arrested and detained." *Id*

Respondents aver that on December 2, 2025, the Drug Enforcement Administration ("DEA") referred [Flores Torres] to the ICE Enforcement and Removal Operations ("ERO") office "based on suspicion that [she] was engaged in money laundering and acting as a courier for drug trafficking organizations." Dkt. No. 6 at 3–4. She was taken into custody on December 9, 2025, and transferred to NWIPC. *Id.* at 4. She is scheduled for a master calendar hearing before an immigration judge in the Tacoma Immigration Court on January 29, 2026. *Id.* "She remains in ICE custody at the No[r]thwest [ICE] Processing Center in Tacoma, Washington." *Id.*

Flores Torres filed her petition for writ of habeas corpus on December 23, 2025. Dkt. No. 1. She requests that the Court order Respondents[1] to release her from custody "immediately" and permanently enjoin her "re-detention during the pendency of her removal proceeding absent

---

[1] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

written notice and a hearing prior to re-detention"; "[d]eclare that Ms. Flores's re-detention while removal proceedings are ongoing without first providing an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment"; and award her attorney's fees and costs. *Id.* at 10. Respondents filed their response to the petition on January 12, 2026, Dkt. No. 6, and Flores Torres filed her traverse on January 14, 2026, Dkt. No. 9. Because briefing is completed, the petition is ripe for review.

## II.     DISCUSSION

It is undisputed that Flores Torres is an applicant for admission who is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). Dkt. No. 6 at 2; *see generally* Dkt. Nos. 1, 9. Respondents argue that Flores Torres is "lawfully detained" because Section 1225(b) mandates detention. *Id.* at 4–5. They explain that "[t]he facts here are simple: [Flores Torres] was subject to mandatory detention, [she] was granted discretionary parole, ICE exercised its discretionary authority to revoke her parole, and she was re-detained during her removal proceedings and while her asylum claim is being processed." *Id.* at 6.

Flores Torres responds that she must be released because Respondents failed to provide her with "written notice or the chance to present her case before a neutral decisionmaker to determine whether re-detention was warranted based on individualized findings of flight or danger" before she was detained. Dkt. No. 9 at 2. Flores Torres requests that the Court (1) order Respondents to release her from custody immediately; (2) "permanently enjoin[] [her] re-detention during the pendency of her removal proceeding absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that she is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks"; (3) "[d]eclare that Ms. Flores's re-detention while removal proceedings are ongoing without first providing an individualized determination before a neutral decisionmaker violates the Due Process

Clause of the Fifth Amendment"; and (4) award Flores Torres "attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law[.]" Dkt. No. 1 at 10.

A.   **Jurisdiction**

Respondents argue that "several provisions at 8 U.S.C. § 1252 preclude review." Dkt. No. 6 at 6. These provisions are 8 U.S.C. § 1252(g), which purportedly "bars review of Petitioner's claims because they arise from the government's decision to commence removal proceedings"; 8 U.S.C. § 1252(b)(9), which purportedly "bars the Court from hearing Petitioner's claims because her claims challenge the decision and action to detain her, which [in turn] arises from the government's decision to commence removal proceedings"; and 8 U.S.C. § 1252(e)(3), which purportedly "limits '[j]udicial review of determinations under Section 1225(b) of this title and its implementation.'" *Id.*

These arguments misapprehend Flores Torres's petition. Flores Torres does not dispute the government's decision to commence removal proceedings, and she does not seek review of her removal proceedings. Flores Torres only seeks judicial review of the procedure by which her parole was revoked and she was detained. Therefore, the provisions of 8 U.S.C. § 1252 cited by Respondents do not preclude this Court's jurisdiction. *See Khalil v. President*, No. 25-2162, 2026 WL 111933, at *9 (3d Cir. Jan. 15, 2026) (Section 1252(b)(9) would not prevent a non-citizen from challenging illegal detention "right away on habeas" because "illegal detention cannot be remedied later"); *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *3 (W.D. Wash. Nov. 25, 2025) (rejecting the same arguments regarding the same provisions).

B.   **Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody

upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v.*

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

### C.     Flores Torres has Established a Statutory Violation and a Due Process Violation

#### 1.     Applicability of the Due Process Clause

The Supreme Court has noted important distinctions "between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958). "In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The "entry fiction" extends this distinction "to some individuals within the United States but who, as a result of their status, are deemed technically to be outside." *Xi v. I.N.S.*, 298 F.3d 832, 837 (9th Cir. 2002). For example, "[w]hen [a noncitizen] arrives at a port of entry—[such as] an international airport—the [noncitizen] is on U. S. soil, but the [noncitizen] is not considered to have entered the country for the purposes of this rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020). In other words, "[noncitizens] who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process

purposes 'as if stopped at the border.'" *Id.* (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). The Supreme Court has held that this means that a noncitizen in such circumstances is limited to "only those rights *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added).

"But the Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the *detention* of a person living freely, for years, within the United States—and its expansion here cannot be justified." *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *2 (D. Mass. Nov. 7, 2025) (emphasis added); *see also Padilla v. ICE*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (addressing the distinction between a challenge to admission and a challenge to detention and holding that *Thuraissigiam* does not foreclose a challenge to detention); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 147, 151 (W.D.N.Y. 2025) ("While *Thuraissigiam* forecloses the argument that [petitioner] has due process rights beyond those provided by statute concerning the process for deciding whether or not he will be *admitted* to this country, it does not foreclose his arguments regarding parole revocation and release."). As the court observed in *Rincon*,

> "The proper use of legal fiction is to prevent injustice." *Union Refrigerator Transit Co. v. Commonwealth of Kentucky*, 199 U.S. 194, 208 (1905) ("*[I]n fictione juris semper aequitas existit.*" (quoting 3 William Blackstone, *Commentaries* *43) ["Within a legal fiction, equity always resides."]). Pretending that Petitioner never entered the United States not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every "person" within the United States. U.S. Const. amend. V.
>
> To be sure, this has always been, to some degree, the effect of the entry fiction doctrine. *See, e.g.*, *Thuraissigiam*, 591 U.S. [at] 138–40 (holding that a non-citizen could not challenge on constitutional due-process grounds the procedure that determined his admission to the United States, even though he was detained twenty-five yards *past* the southern border). But those cases reflect a pragmatic and functional balance between two legal absolutes *not* in tension here—the Constitution's foundational prohibition against "arbitrary governmental action," *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and "the 'sovereign prerogative' of

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

governing admission to this country," *Thuraissigiam*, 591 U.S. at 140 (quoting [*Landon v.*] *Plasencia*, 459 U.S. [21,] 32 [(1982)]. . . .

While detention pending removal proceedings certainly constitutes an "aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), it only collaterally implicates Congress's "sovereign prerogative . . . to decide which [noncitizens] to *admit*," *Thuraissigiam*, 591 U.S. at 139 (emphasis added) (quoting *Plasencia*, 459 U.S. at 32).

This matters because that "sovereign prerogative," *id.*, is the basis of the judge-made rule that undergirds *Thuraissigiam* and similar cases—the so-called entry fiction doctrine, whereby a non-citizen physically present in the United States is treated "as if stopped at the border" for purposes of due process, *id.* (quoting [*Shaughnessy v. United States ex rel.*] *Mezei*, 345 U.S. [206,] 215 [(1953)].

2025 WL 3122784, at *2, 5 (parallel citations omitted). Thus, while "[g]ranting the relief requested in *Mezei* or *Thuraissigiam*—initial entrance to the United States (*Mezei*) or a more robust process toward admission (*Thuraissigiam*)—might have genuinely 'undermine[d] the sovereign prerogative of governing admission to this country,'" the same "cannot be said" with respect to a petitioner "who merely seeks to continue engaging in the same removal proceedings as before, only not from a jail cell." *Id.* at 7 (finding that, because "the fiction required to deprive Petitioner of his constitutional protections is severely disproportionate" and "nowhere in line with the reasonable workings of those prior cases," to apply the entry fiction doctrine to a case like Petitioner's "is to set aside the plain meaning of the Fifth Amendment altogether"); *see also Malunda David Gilberto Destino v. FCI Berlin, Warden, et al.*, No. 1:25-CV-374-SE-AJ, 2025 WL 4010424, at *7 (D.N.H. Dec. 24, 2025) ("In non-admission contexts, which do not directly implicate the executive's sovereign prerogative, the Due Process Clause protects liberty interests that may accrue regardless of statutory allowances.").

Here, where Flores Torres has "lived with relative freedom in the United States for . . . years," the constitution does not countenance fictional erasure of her actual presence in this country—or her concomitant due process rights. *Rincon*, 2025 WL 3122784, at *6–7. As explained

by the Supreme Court in *Morrissey v. Brewer*, parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. 471, 482 (1972). "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Because "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," the revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and the parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84 (citation modified).

This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*. *See, e.g.*, *R.A.N.O. v. Wofford*, No. 1:25-CV-01535-KES-EPG (HC), 2026 WL 40507, at *5 (E.D. Cal. Jan. 6, 2026) (finding liberty interest established where petitioner's humanitarian parole "allowed him to establish ties in the community, work pursuant to a valid work authorization, and pursue relief in his removal proceedings"); *Malunda David Gilberto Destino*, 2025 WL 4010424, at *7, *12 (after noting that "[l]iberty interests may spring from lives lived, connections fostered, and promises made or implied," finding that petitioner who had spent nearly three years at liberty as a parolee, during which he "worked, settled in Maine, and started a family with his fiancée," had "relied on 'an implicit promise that [his] parole [would] be revoked only if he fail[ed] to live up to the parole conditions'" (quoting *Morrisey*, 408 U.S. at 482)); *Tenemasa-Lema v. Hyde*, No. CV-25-13029-BEM, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025) (fact that petitioner had lived with relative freedom as a parolee for more than four years and "made a home here with his wife and their daughter" established a constitutional liberty interest); *Ramirez Tesara v. Wamsley*, 800 F.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

2. <u>Statutory Violation</u>

Even if there were no due process violation here, Flores Torres has demonstrated that the Government failed to follow federal law in revoking her parole. Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk. To revoke parole, in turn, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"). If an exclusion, deportation, or removal order is subsequently issued and "cannot be executed within a reasonable time," the noncitizen "shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

Here, it appears to be undisputed that Flores Torres was arrested and re-detained without any notice that her parole was revoked. Dkt. No. 1 at 6; Dkt. Nos. 6–8, 8-1. Indeed, Respondents

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

have offered no evidence that they provided her with the written notice required by 8 C.F.R. § 212.5(e)(2)(i), even to this date. *See generally* Dkt. Nos. 6–8, 8-1.[2] And Respondents have also put forth no evidence that a relevant official opined that "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence" of Flores Torres in the United States. *See generally* Dkt. Nos. 6–8, 8-1. To the contrary, Respondents only aver that Flores Torres was taken into custody "based on suspicion that [she] was engaged in money laundering and acting as a courier for drug trafficking organizations." Dkt. No. 6 at 3–4. Thus, the Court concludes that the manner in which the government revoked Flores Torres's parole violated her statutory rights. *See Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[] . . . Petitioner's detention[] is unlawful."). This is important because "the applicable statutory process shapes [Flores Torres's] procedural due-process rights." *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2025 WL 3280777, at *7 (E.D. Cal. Nov. 25, 2025) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)).

    3.    <u>Due Process Violation</u>

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

---

[2] Respondents state that "ICE has the clear discretionary authority to revoke conditional parole" under 8 C.F.R. § 236.1(c)(9). Dkt. No. 6 at 7. Assuming without deciding that this regulation applies, Respondents make no effort to explain how it excuses compliance with 8 C.F.R. § 212.5(e)(2)(i), nor have they shown that the decision to revoke Flores Torres's parole was made "in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)." 8 C.F.R. § 236.1(c)(9); *see generally* Dkt. Nos. 6–8, 8-1.

Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Courts analyze three factors to determine whether an administrative procedure provides due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th 1189, 1206–07 (9th Cir. 2022), and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). The parties appear to agree that the *Mathews* test applies here. *See* Dkt. No. 6 at 8; Dkt. No. 9 at 4–6.

Regarding the first factor, Flores Torres avers that she has a liberty interest in being "free[] from imprisonment." Dkt. No. 9 at 4 (quoting *Zadvydas*, 533 U.S. at 690). She argues that this "interest is particularly weighty" because she "had been living openly in the community in compliance with all government requirements." *Id.* Respondents concede that there is a general liberty interest in not being detained, Dkt. No. 6 at 8, but they argue that Flores Torres's release "was always subject to conditions of release, and she knew that she could be re-detained," so she "cannot claim that the government promised her ongoing freedom." Dkt. No. 6 at 9.

True enough, the statutory framework does not entitle arriving noncitizens to unconditional or perpetual parole, but it does provide the procedural protections described above upon revocation. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i). And as discussed above, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of

due process[.]" *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Again, a "parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and the resulting liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that "its termination calls for some orderly process." *Morrissey*, 408 U.S. at 482. Here, Flores Torres has lived in the community on parole for at least six years, taking care of her ill and disabled mother and obtaining work at a food processing facility. Dkt. No. 6 at 3–4; Dkt. No. 8-1 at 3. A "petitioner's liberty interest [does] not expire along with [her] parole." *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (citation modified). The Court finds that this factor weighs in Flores Torres's favor.

Turning to the second factor, Flores Torres argues that "unilateral ICE re-detention creates an acute risk of error"—a risk that "neutral review substantially reduces[.]" Dkt. No. 9 at 5 (capitalization modified). Respondents argue that "[t]he existing procedures are constitutionally sufficient" because "noncitizens have no right to a hearing before an immigration judge under Section 1225(b)." Dkt. No. 6 at 9. The Court finds that due process at least requires that (1) the government "justify the basis for re-detention," Dkt. No. 1 at 2, as prescribed by the statute and its implementing regulations, and (2) Flores Torres must be given "the opportunity to be heard" with respect to the government's basis for re-detention "at a meaningful time and in a meaningful manner." *Mata Velasquez*, 794 F. Supp. 3d at 146 (quoting *Mathews*, 424 U.S. at 333).

Here, as discussed above, the government did not follow the procedures required by its own regulations to terminate Flores Torres's parole. The risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus

depriving the noncitizen of process due prior to revocation.[3] "[T]he additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme[.]" *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025). This factor favors Flores Torres.

With respect to the third factor, Respondents argue that the government has "a strong interest in returning noncitizens to custody who violate conditions of release." *Id.* at 10. But the government's reason for detaining Flores Torres was not that she definitively violated her conditions of release—it was that she is *suspected* of having committed a crime. Dkt. No. 6 at 3–4; Dkt. No. 8-1 at 3. Respondents provide no evidence that she actually did commit a crime, and more importantly, to the extent the government did have a basis for revoking Flores Torres's parole, it was incumbent upon the government to make the appropriate findings and provide Flores Torres with written notice of the revocation. This it did not do.[4] The Court acknowledges that the government has a strong interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Flores Torres with notice and an opportunity to

---

[3] *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where "ICE revoked petitioner's release on the grounds that his removal was reasonably foreseeable, but it did not provide petitioner the process required by its own regulations, it forced petitioner to file a habeas petition to obtain relief, and [it] has failed to identify any evidence that petitioner's removal was actually reasonably foreseeable at any point"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("the risk of an erroneous deprivation of [petitioner's] interest [in remaining out of custody pursuant to her humanitarian parole] is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard"); *Munoz Materano v. Arteta*, No. 25-CV-6137-ER, 2025 WL 2630826, at *14 (S.D.N.Y. Sept. 12, 2025) (finding a risk of erroneous deprivation where "Respondents provide[d] no indication that an individualized determination was made as to the revocation of [Petitioner's] parole; nor d[id] they articulate, even now, either that the purpose for which [Petitioner's] parole was authorized has been accomplished, []or that neither humanitarian reasons nor public benefit warrants his continued presence in the United States.").

[4] To the extent Respondents are arguing that Flores Torres's missed July 2025 check-in is the reason for her revocation, the record undermines that contention. Dkt. No. 6 at 3–4 (stating that Flores Torres was detained because she is suspected of having committed a crime); Dkt. No. 8-1 at 3 (same).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

be heard on the government's basis for revoking her parole would have impaired this interest. *O.F.B.*, 2025 WL 3277677, at *7 ("[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." (citation modified)). Therefore, this factor too weighs in favor of Flores Torres.

Based on the foregoing review of the *Mathews* factors, the Court finds that Respondents failed to provide Flores Torres with the procedures due to her under the Due Process Clause, and accordingly, her detention is unlawful.

D.     **The Court Denies Flores Torres's Request for Permanent Injunctive Relief**

Flores Torres requests an order "permanently enjoining h[er] re-detention during the pendency of her removal proceeding absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that she is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks." Dkt. No. 1 at 10.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Nowhere in Flores Torres's petition does she allege that re-detention is likely, or that such detention is likely to occur without proper notice and an opportunity to be heard. Without argument

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15

or evidence that unlawful re-detention is likely to occur, Flores Torres's request constitutes nothing more than a "mere possibility" that does not entitle her to relief. *Id.* (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, her request for injunctive relief preventing her re-detention is denied.

### III.    CONCLUSION

For the reasons stated above, the petition writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART AND DENIED IN PART, and the Court ORDERS as follows:

1.  Respondents shall immediately release Flores Torres from custody subject to the conditions of her most recent parole agreement;

2.  The parties shall file a Joint Status Report by January 21, 2026, confirming that Flores Torres has been released;

3.  Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 20th day of January, 2026.

Lauren King
United States District Judge